USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/20/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CIARA CRYSTALIN MARIE SANTOS,                   :
                                                :
                    Plaintiff,                  :          **OPINION &**
                                                :          **ORDER**
-v-                                             :
                                                :
KILOLO KIJAKAZI,                                :          21-CV-1682 (JLC)
Acting Commissioner of Social Security,         :
                                                :
                    Defendant.                  :
                                                :
------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Ciara Crystalin Marie Santos seeks judicial review of a final determination
made by Kilolo Kijakazi, the Acting Commissioner of the Social Security
Administration, denying her application for supplemental security income under
the Social Security Act.[1]  The parties have cross-moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the
reasons set forth below, Santos' motion is granted, the Commissioner's cross-motion
is denied, and the case is remanded for further proceedings.

---

[1] Santos changed her last name to Santos before filing this action.  At the time of
her application for disability benefits, her last name was Barksdale.  Def. Mem. at
1, n. 1; AR at 33.

# I. BACKGROUND

## A. Procedural History

Santos filed an application for Supplemental Security Income ("SSI") on August 16, 2019, alleging a disability onset date of February 1, 2019.[2] Administrative Record ("AR"), Dkt. No. 15 at 11.[3]  The Social Security Administration ("SSA") denied Santos' claims on October 21, 2019 and again upon reconsideration on November 27, 2019.  *Id.*  On December 5, 2019, Santos requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 30, 2020.  *Id.*  In a decision dated July 31, 2020, ALJ Elias Feuer found that Santos was not disabled and denied her application.  *Id.* at 20.  Santos sought review of the ALJ's decision by the Appeals Council, which denied the request on January 4, 2021, rendering the ALJ's decision to be the final decision of the Commissioner.  *Id.* at 1.

Santos timely commenced this action on February 25, 2021, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Complaint, Dkt. No. 1.  On July 27, 2021, Santos filed an Amended Complaint ("Am. Compl.") Dkt. No. 14.  The Commissioner answered by filing the Administrative Record on September 24, 2021.  Dkt. No. 15.  On November 18, 2021, Santos moved for

---

[2] Although the complaint and both parties' motion papers identify an onset date of February 1, 2019, Santos' counsel stated at the hearing that the onset date was the application date (August 16, 2019), *see* AR at 34–35, and the ALJ determined that Santos was not disabled as of the application date, August 16, 2019, *see id.* at 20.

[3] The page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

judgment on the pleadings and submitted a memorandum of law in support of her motion.  Notice of Motion, Dkt. No. 16; Memorandum of Law in Support of Plaintiff's Motion ("Pl. Mem."), Dkt. No. 17.  The Commissioner cross-moved for judgment on the pleadings on February 16, 2022 and submitted a memorandum of law in support of her cross-motion.  Notice of Motion, Dkt. No. 25; Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Mem."), Dkt. No. 26.  On March 15, 2022, Santos submitted reply papers.  Reply Brief ("Pl. Rep."), Dkt. No. 29.  The parties have consented to my jurisdiction for all purposes under 28 U.S.C. § 636(c).  Dkt. No. 21.

### B. Santos' Background

Santos was born on September 11, 1989, and attended school through the 10th grade.  AR at 30, 187.  At the time of the hearing, she lived in the Bronx with her seven-year old daughter.  *Id.* at 30, 44–45.  Santos has suffered from mental illness since she was a child.  *Id.* at 201.  At the time of the hearing, Santos had stopped working.  *Id.* at 186.

### C. The Hearing Before the ALJ

The hearing was held in the Bronx before the ALJ on April 30, 2020.  *Id.* at 26.  Santos and her counsel, David Levine, appeared by telephone.  *Id.* at 28.[4]  Also

---

[4] The hearing transcript in the record notes that Santos appeared at the hearing in person and was unrepresented.  AR at 28.  This appears to be incorrect as the transcript later reflects that Santos was represented by counsel, and that the hearing was held over the phone.  *Id.*

present was Vocational Expert ("VE") Melissa Fass Karlin. *Id.* at 27.  Before taking

Santos' testimony, the ALJ told Levine that it appeared the record was missing

notes from Santos' therapy sessions, and thus he was going to keep the record open

so that Levine could submit additional records. *Id.* at 36.

Santos testified to previously holding the following jobs: receptionist at H&R

Block, receptionist at the Jewish Community Counsel of Greater Coney Island, and

greeter at the Manhattan Zoo. *Id.* at 48–49.  She explained that she quit her job at

H&R Block because she felt "super overwhelmed" and "couldn't do the job anymore."

*Id.* at 38.  Similarly, she left her job at the Jewish Community Council because she

felt "moody" and "constantly overwhelmed." *Id.* at 49.

Both the ALJ and her counsel questioned Santos about her mental condition

and the effect her bipolar disorder and borderline personality disorder have on her

personal life and work. *Id.* at 37–38.  Santos testified that her mental illness makes

it "hard to live a normal life.  It is very overwhelming, it can be emotional, [she] can

get moody." *Id.* at 37.  The effects of this illness make it difficult for her to

"communicate with other people." *Id.*  For example, when she was a receptionist at

H&R Block, she often "found [herself] sitting at the front desk really emotional,

feeling overwhelmed, crying, arguing with the clients for no reason." *Id.*

Santos further testified that at the time she was having trouble at H&R

Block, she was not receiving mental health treatment. *Id.* at 38.  Although she now

takes medication, she continues to have problems, but not to the same degree as

when she worked at H&R Block. *Id.* at 40.  She further explained that although she

"always" takes her medication, if she has a "depressive episode" or is feeling suicidal, she will not take her medication because she is afraid that she will purposely overdose.  *Id.* at 41.

Santos provided a summary of her day-to-day life, including her responsibilities with regard to her daughter.  She testified that although she struggles to wake up and get out of bed in the morning, she does eventually do so, so that she can take her daughter to school, although as a result of her struggle, her daughter is often late or absent.  *Id.* at 43–44.  She does not really socialize and if she is "forced to be in a group" she feels overwhelmed.  *Id.* at 45.

After Santos' testimony, the ALJ questioned the VE.  *Id.* at 53.  The VE classified Santos' previous work as: general clerk, receptionist, and landscape specialist.  *Id.*  The ALJ then posed the following hypothetical to the VE:  an individual with the same age, education, and experience as Santos, limited only to occasional interaction with coworkers and supervisors, and none with the general public.  *Id.* at 54.  The VE testified that this individual could perform the following medium jobs: hand packager, cleaner, or kitchen helper.  *Id.* at 54–55.  The same person, the VE testified, could perform the following light jobs: cleaner/housekeeping and routing clerk.  *Id.* at 55.  The VE also testified that if this individual was further limited to "performing simple, routine and repetitive tasks and making simple work-related decisions" she could still perform the specified jobs. *Id.*  However, according to the VE, this same individual would not be able to maintain "competitive employment" if she was absent more than once per month

5

and off task more than 10 percent of the workday.  *Id.* at 55–56.  Finally, the VE testified as to the limitations the individual would have interacting with her boss. *Id.* at 57.  The VE stated that if this person could not handle even "occasional contact with a supervisor" then she would be precluded from work.  *Id.*  After additional questioning from the ALJ, the VE clarified that "occasional" meant the individual is not able to interact with her supervisor for a minimum of 30 minutes per day, and that would preclude employment.  *Id.* at 58.

### D. The Administrative Record

#### 1. Medical Evidence

In her motion papers, Santos provided a summary of the medical evidence contained in the administrative record.  *See* Pl. Mem. at 1–8.  In response, the Commissioner adopted Santos' recitation of the relevant facts and underlying proceedings.  *See* Def. Mem. at 7.  She also submitted "additional or contrary facts not contained in Plaintiff's Memorandum of Law," to which Santos has not objected. *Id.* at 8.  Having examined the record, the Court adopts the parties' summaries as accurate and complete for purposes of the issues raised in this action.  *See, e.g., Platt v. Comm'r of Soc. Sec.,* No. 20-CV-8382 (GWG), 2022 WL 621974, at *2 (S.D.N.Y. Mar. 3, 2022) (adopting parties' summaries of medical evidence).  The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II.B below.

### 2. The ALJ's Decision

The ALJ denied Santos' application on July 31, 2020.  AR at 20.  In doing so, the ALJ concluded that Santos was not disabled under Section 1614(a)(3)(A) of the Social Security Act from August 16, 2019, the date of the application, through July 31, 2020, the date of the decision.  *Id.*

Following the five-step test set forth in the SSA regulations, the ALJ first found that Santos had not engaged in substantial gainful activity since August 16, 2019, the application date.  *Id.* at 14.  At step two, the ALJ found that Santos had the following severe impairments: bipolar disorder, depressive disorder, anxiety disorder, history of cannabis abuse disorder, and history of alcohol abuse disorder.  *Id.*

At step three, the ALJ found that Santos did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926)." *Id.*

Prior to evaluating step four, the ALJ determined Santos' residual functional capacity ("RFC").  Based on his analysis, the ALJ concluded that Santos had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to performing simple, routine, and repetitive tasks and making simple work-related decisions.  [Santos] can have no more than occasional interaction with co-workers, supervisors and the general public." *Id.* at 16.  In reaching his conclusion, the ALJ found that Santos' medically

7

determinable impairments could reasonably be expected to cause the alleged
symptoms, but that Santos' statements concerning the intensity, persistence, and
limiting effects of these symptoms were not entirely consistent with the medical
evidence and other evidence in the record. *Id.* at 17. The ALJ reviewed and
summarized Santos' medical records. *Id.* at 17–19. He also detailed which
physicians' opinions he found persuasive and which he found unpersuasive. *Id.* In
particular, he found certain portions of the medical opinion from Dr. Joan Llesuy,
Santos' treating psychiatrist, to be persuasive, but other portions, such as Dr.
Llesuy's assessment of Santos' marked and extreme limitations, to be inconsistent
with the record, and with the opinions of the state agency medical consultants, Dr.
A. Chapman and Dr. E. Kamin. *Id.* at 18.[5]

At step four, the ALJ determined that Santos "has no past relevant work."
*Id.* at 19.[6] At step five, considering Santos' "age, education, work experience, and
residual functional capacity," the ALJ concluded that jobs "exist in significant
numbers in the national economy" that Santos could perform, including hand
packager, cleaner, kitchen helper, cleaner/housekeeper, and routing clerk. *Id.* at 20.
Accordingly, the ALJ determined that Santos was "not disabled" under the Social
Security Act. *Id.*

---

[5] The full names of Dr. Chapman and Dr. Kamin do not appear in the record.

[6] Although in this part of his decision the ALJ stated that Santos had no past
relevant work, this appears to be an error, as at the hearing both Santos and the VE
testified as to her past relevant work.

## II. DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g).  The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review."

*DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'"  *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing."  42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence."  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

## 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "'[T]he ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period . . . following the date of his claim.'" *Love v. Kijakazi*, No. 20-CV-1250 (EK), 2021 WL 5866490, at *5 (E.D.N.Y. Dec. 10, 2021) (quoting *Williams v. Colvin*, No. 15-CV-144 (WMS), 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)); *see also Milliken v. Saul*, No. 19-CV-9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) ("A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability.").

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)). Specifically, the Commissioner's decision must consider factors such as: "(1) the

11

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (citations omitted).

### a. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner must establish whether the claimant is presently employed. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is considered disabled. *See id.*; 20 C.F.R. § 404.1520(d).

If the claimant alleges a mental impairment, "the regulations further require that the [Commissioner] 'rate the degree of [the claimant's] functional limitation based on the extent to which [her] impairment(s) interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Rosario v. Kijakazi*, No. 20-CV-5490 (JPC) (BCM), 2022 WL 875925, at *11

(S.D.N.Y. Mar. 15, 2022) (quoting 20 C.F.R. § 404.1520a(c)(2)), *adopted by* 2022 WL

976879 (Mar. 31, 2022).  "The degree of functional limitation is rated in 'four broad

functional areas,' including the claimant's ability to '[u]nderstand, remember, or

apply information; interact with others; concentrate, persist, or maintain pace; and

adapt or manage oneself.'"  *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3)).  The

Commissioner uses a five-point scale to determine the degree of limitation in each

area:  None, mild, moderate, marked, and extreme.  *See* 20 C.F.R. § 404.1520a(c)(4).

"These ratings are used both at step two, to determine whether a mental

impairment is 'severe,' and at step three, to determine whether a severe mental

impairment meets or medically equals a listed impairment."  *Rosario*, 2022 WL

875925, at *11.

 If the claimant's impairment does not meet or equal a listed impairment,

then the Commissioner continues to the fourth step and determines whether the

claimant has the RFC to perform his or her past relevant work.  *See* 20 C.F.R. §

404.1520(a)(4)(iv).  Finally, if the claimant does not have the RFC to perform past

relevant work, the Commissioner completes the fifth step and ascertains whether

the claimant possesses the ability to perform any other work.  *See* 20 C.F.R. §

404.1520(a)(4)(v).

 The claimant has the burden at the first four steps.  *Burgess v. Astrue*, 537

F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the

Commissioner at the fifth and final step, where the Commissioner must establish

that the claimant has the ability to perform some work in the national economy. *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b. Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted). For SSI and Social Security Disability Insurance applications filed prior to March 27, 2017, SSA regulations set forth the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant clinical relationship with the plaintiff. 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2); *see also, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004). Under the treating physician rule, an ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources. *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000). In addition, a consultative physician's opinion was generally entitled to "little weight." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the evaluation of medical opinion for claims filed on or after March 27, 2017 (such as Santos' claim in this case). *See* REVISIONS TO THE RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017). "In

14

implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *19 (S.D.N.Y. Sept. 24, 2021) (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)). "Instead, an ALJ is to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)–(b), 416 920c(a)–(b). Under the new regulations, the ALJ must "explain how [she] considered" both the supportability and consistency factors, as they are "the most important factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ v. Comm'r of Soc. Sec.*, No. 20-CV-6389 (RWL), 2022 WL 278657, at *6 (S.D.N.Y. Jan. 31, 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors). Evaluating "supportability is an inquiry geared toward assessing how well

a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021), *adopted by* 2022 WL 717612 (Mar. 10, 2022).  With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion).  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[W]hen the opinions offered by two or more medical sources about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, the ALJ [should] articulate how he considered the remaining factors in evaluating the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal quotations removed).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting

16

cases) ("the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar").  "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at *9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819910, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must explain in all cases how [he or she] considered" supportability and consistency); *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *adopted by* 2021 WL 134945 (Jan. 14, 2021) (remanding so ALJ can "explicitly discuss both the supportability and consistency of the consulting examiners' opinions").  "An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler*, 546 F.3d at 265).  However, the Court need not remand the case if the ALJ only committed harmless error, *i.e.*, where the "application of the correct

17

legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Analysis

Santos raises a half dozen objections to the ALJ's decision: (1) the ALJ failed to properly evaluate the opinion evidence; (2) the ALJ erred in finding her mental impairments did not meet the Listings; (3) the RFC was inconsistent with the medical opinions the ALJ found persuasive; (4) the RFC was inconsistent with the ALJ's finding of moderate limitations in her concentration, persistence, and pace, and in her ability to adapt and manage herself; (5) the ALJ failed to consider her obesity; and (6) the ALJ failed to consider time off-task or absenteeism.  Pl. Mem. at 11–24.  The Commissioner responds that (1) the ALJ properly evaluated the opinion evidence; (2) Santos has not demonstrated that Dr. Chapman's and Dr. Kamin's findings were inconsistent with the RFC assessment; (3) the ALJ properly evaluated the Listings; (4) the RFC is consistent with moderate limitations in concentration, persistence, and pace, as well as adapting or manage herself; and (5) the ALJ properly considered Santos' obesity.  Def. Mem. at 13–24.

As discussed further below, the ALJ failed to consider or provide for limitations with regard to the time Santos might spend off-task or be absent from work.  Because the ALJ erred in this regard and this error was not harmless, it is not necessary to reach Santos' other arguments.

### 1. The ALJ Failed to Consider Santos' Potential Absences

Santos argues that the ALJ's RFC assessment failed to account for the moderate limitations identified by the state agency physicians and the marked limitations identified by Santos' treating psychiatrist. Pl. Mem. at 23. The state agency physicians, Dr. Chapman and Dr. Kamin, found that Santos has moderate limitations in her ability to "perform activities within a schedule; maintain regular attendance; and be punctual within customary absences." AR at 67–68, 77. Santos' treating psychiatrist, Dr. Llesuy, opined that Santos has a "marked" loss in her ability to "maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision;" and a "moderate" loss in her ability to be punctual." *Id.* at 390. In addition, as the ALJ noted in his decision, Dr. Llesuy opined that Santos would be absent from work more than three times per month. *Id.* at 18 (referring to *id.* at 389). Santos argues that the ALJ's failure to account for these limitations was a "material error" because the VE testified that all of the unskilled jobs she listed for an individual matching Santos' profile would be unavailable if the individual was absent from work more than once a month. *Id.* at 56. The Court agrees with Santos and concludes that the ALJ did not adequately account for any potential absences in determining the RFC.

All three doctors—Llesuy, Chapman, and Kamin—found that Santos had a moderate limitation in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *Id.* at 67, 390. These findings alone are not necessarily enough to cast doubt on Santos' ability to

maintain a routine. *See, e.g. Melisa G. v. Berryhill*, 18-CV-0508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) ("moderate limitations are not prohibitive of performing unskilled work").[7] However, in addition to finding that Santos has a moderate limitation in her ability to maintain regular attendance and be punctual, Dr. Llesuy also anticipated that Santos' impairments would cause her to be absent from work more than three times per month. AR at 389. While the ALJ re-stated this finding in his decision (AR at 18), he did not weigh it to determine if it was supported by, or consistent with, the record. This is a significant omission in the ALJ's decision. The VE testified that an individual with Santos' profile would not be able to maintain the jobs she listed if she was absent more than once per month. *Id.* at 56. Taking the moderate limitations together, along with Dr. Llesuy's opinion of Santos' potential absences, the ALJ was obligated to address and reconcile them with the VE's testimony in coming to his RFC assessment. *See e.g., Matos v. Comm'r of Soc. Sec.,* No. 20-CV-10686 (GBD) (JW), 2022 WL 3084512, at *8 (S.D.N.Y. June 16, 2022) (ALJ should "address the interplay between: (1) the limitations concerning absenteeism, tardiness and being off-task identified by the

---

[7] In addition, Santos points out that Dr. Llesuy found that she had a marked loss in her "ability to maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; . . . complete a normal workday or work week without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods." Pl. Mem. at 23. However, the ALJ adequately explained his decision to discount Dr. Llesuy's findings of marked and extreme limitations. AR at 18. He placed greater weight on the findings of Dr. Chapman and Dr. Kamin, which he described as being supported and consistent with the objective medical evidence in the record. *Id.* at 19.

vocational expert that would preclude employment; and (2) moderate limitations found by [the doctor]"), *adopted by* 2022 WL 3084404 (Aug. 3, 2022).

While the Commissioner does not directly address Dr. Llesuy's absence finding, she argues that the ALJ's RFC assessment adequately accounts for Dr. Chapman's and Dr. Kamin's findings of moderate limitations by limiting Santos to "simple, routine, and repetitive tasks, with simple work-related decisions, and no more than occasional interaction with others." Def. Mem. at 19. The Commissioner cites to caselaw stating that such an RFC assessment accounts for "limitations for performing activities within a schedule and maintaining regular attendance." Def. Mem. 19–20 (citing *Andrea N. v. Saul*, No. 18-CV-1186 (CFH), 2020 WL 1140512, at *5 (N.D.N.Y. Mar. 9, 2020)). While this is true, Santos' situation goes beyond solely having a moderate limitation in her ability to maintain attendance or keep to a schedule. Dr. Llesuy explicitly opined that Santos would be absent more than three times per month. How Dr. Llesuy's opinion jibes with the VE's testimony is an "interplay" the ALJ "failed to address." *Matos*, 2022 WL 3084512, at *8. Thus, *Andrea N.*, to which the Commissioner cites, is distinct—there, the ALJ did address and make a determination regarding the doctor's suggested limitations. *See Andrea N.*, 2020 WL 1140512, at *5. The ALJ did not make such a determination here.

In *Matos v. Commissioner*, the Court found that the ALJ ignored

> parts of the vocational expert's testimony on which he relied to satisfy his burden at step five, and he failed to explain how an individual with moderate limitations in [certain] areas would be able to sustain employment in light of the vocational expert's testimony. The ALJ's hypothetical question posed to the vocational expert did

> not match or adequately reflect the ALJ's residual
> functional capacity assessment because it included
> limitations concerning absenteeism, tardiness, and off-
> task that the ALJ erroneously failed to address in the
> residual functional capacity determination.

2022 WL 3084512, at *8.  Here, as in *Matos*, while the ALJ included the issues of

absenteeism and time spent off-task in his hypothetical to the VE, he did not then

include them, or the VE's response, in his RFC determination.  It is also not clear

from the record how the ALJ weighed Dr. Llesuy's finding with regard to Santos'

absences.  There might have been greater clarity if the ALJ had found Dr. Llesuy's

*entire* opinion to be unpersuasive, but he did not.  He found her finding of moderate

limitations to be supported by the medical evidence in the record.  AR at 18.

Accordingly, it is unclear if Dr. Llesuy's finding regarding absences is a moderate

limitation that the ALJ found persuasive, a marked limitation that he found

unpersuasive, or something else entirely.  *See, e.g., Guzman v. Comm'r of Soc. Sec.*,

No. 20-CV-7420 (JMF) (SDA), 2022 WL 2325908, at *10 (S.D.N.Y. June 10, 2022),

(where there is evidence in record supporting potential absences, even if ALJ

appears to have found medical opinion unpersuasive, his failure to discuss absence

portion of opinion, in light of VE's testimony, was legal error), *adopted by* 2022 WL

2316643 (June 28, 2022).

The Commissioner further argues that the ALJ's RFC assessment is

reasonable based on the record, which demonstrates that Santos maintained

regular attendance at appointments and her capacity to complete daily activities.

Def. Mem. at 19 (citing to AR at 195–97; 298–335, 346–56, 434–43, 510–525, 534–

35, 538–41).[8]  However, there is also evidence in the record that points the other
way.  For example, Santos testified that she quit two jobs because she was
"constantly overwhelmed," "super overwhelmed," and "jittery."  AR at 38, 49.  In
addition, she testified that her young daughter is often either late to or absent from
school because Santos has "an episode" and "cannot will [herself] to get out of bed"
in the morning.  *Id.* at 44.  Thus, there is enough evidence in the record to create at
least a question of whether Santos' daily activities support a loss in her ability to
maintain regular attendance.

It could be that upon a further review of the record, the ALJ finds Dr.
Llesuy's opinion on Santos' potential absences to be unsupported by the objective
medical evidence.[9]  However, as in *Matos*, the ALJ should make an explicit finding
and discuss how his finding corresponds with the VE's testimony.

---

[8] Santos' capacity to maintain regular attendance at her medical appointments is
not obviously demonstrative of her ability to maintain regular attendance at a job,
as the Commissioner suggests it to be.  Notably, the Second Circuit recently
observed that "relying on attendance at medical appointments is unhelpful in
determining whether an individual with significant psychiatric issues can
consistently show up and successfully function in a work environment." *Rucker v.
Kijakazi*, No. 21-CV-621, 2022 WL 4074410, at *5 (2d Cir. Sept. 6, 2022) (citations
omitted).

[9] Dr. Llesuy's opinion is not obviously inconsistent with the opinions of Dr.
Chapman and Dr. Kamin because although both doctors observed that Santos is
"not significantly limited" in her ability "to complete a normal workday and
workweek without interruptions from psychologically based symptoms and to
perform at a consistent pace without an unreasonable number and length of rest
periods," they also both noted that Santos has moderate limitations with regard to
her ability to maintain attention and concentration for extended periods and her
ability to perform activities within a schedule, maintain regular attendance, and be
punctual within customary tolerances. AR at 67, 68.  This on its own appears to be

### 2.  The ALJ Failed to Consider Santos' Potential Time Off-Task

The ALJ, examining the record as a whole, found that Santos has a moderate limitation with regard to concentrating, persisting, or maintaining pace, and with regard to adapting or managing oneself.  *Id.* at 15.  The Commissioner argues that in the Second Circuit, an RFC determination that limits a plaintiff to simple, routine, and repetitive tasks, simple work-related decisions, and only occasional interaction with co-workers, supervisors, and the public, as the RFC does here, is considered to accommodate a moderate limitation in adapting or managing oneself. Def. Mem. at 24, n.12 (citing *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019); *Hill v. Comm'r of Soc. Sec.*, No. 18-CV-1161L (DGL), 2020 WL 836386, at *4–5 (W.D.N.Y. Feb. 20, 2020)).  However, a moderate loss, according to Dr. Llesuy's medical source statement, is defined as "some loss of ability in the named activity, but still can sustain performance for 1/3 up to 2/3 of an 8-hour workday."  AR at 389; *see also Marcano v. Berryhill*, No. 16-CV-8033 (DF), 2018 WL 2316340, at *7, n.23 (S.D.N.Y. Apr. 30, 2018).  Thus, at the very least, with a moderate limitation, Santos would likely be off-task for 1/3 or 33% of the workday. This is significant because at the hearing, the VE testified that "in addition to regularly scheduled breaks," the hypothetical individual could "be off task between 5 and 10 percent," but no more than that.  AR at 56.  Thus, the ALJ should have

---

an inconsistency within their own opinions that the ALJ should have addressed. *See, e.g., Marrero v. Comm'r of Soc. Sec.,* 19-CV-1369 (AMD), 2020 WL 3868709, at *3, n.3 (E.D.N.Y. July 9, 2020) (ALJ should resolve inconsistency between observation in consultative examination and other observations in record).

addressed how a moderate limitation in this area operates in conjunction with the VE's testimony.  *See, e.g., Vicky Lynn S. v. Comm'r of Soc. Sec.*, No. 20-CV-00974 (JJM), 2022 WL 130762, at *5 (W.D.N.Y. Jan. 14, 2022) ("Given the vocational expert's testimony concerning off-task time, the ALJ's analysis of this issue could be critical to the outcome of this claim.")

### 3. The ALJ's Errors Were Not Harmless

The ALJ's failure to discuss the interplay between these medical opinions and the failure to consider them in light of the VE's testimony are not harmless.  If the ALJ finds Dr. Llesuy's assessment of Santos' limitations to be persuasive (as he did other portions of her opinion), it would render Santos unable to obtain any of the jobs identified by the VE.  Accordingly, on remand the ALJ should reassess Santos' potential time spent off-task and her potential absences and make an explicit finding based on the entire record.  *See, e.g., Anderson v. Kijakazi,* No. 20-CV-6462 (JPO) (OTW), 2022 WL 938115, at *8 (S.D.N.Y. Mar. 3, 2022) (if ALJ had found particular portion of medical opinion persuasive, it would have been incorporated into RFC, leading to finding that plaintiff was precluded from all work), *adopted by* 2022 WL 925070 (Mar. 29, 2022).

### III. CONCLUSION

For the foregoing reasons, Santos' motion is granted, the Commissioner's cross-motion is denied, and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to mark the motion at Docket Number 16 as "granted," and the motion at Docket Number 25 as "denied," and enter judgment for Santos.

**SO ORDERED.**

Dated: September 20, 2022
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge